FILED

2024 Sep-23  PM 01:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **PAMELA NELSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:23-cv-00551-AMM** |
| | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| **Commissioner,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OF DECISION

Plaintiff Pamela Nelson brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.    Introduction

On August 27, 2019, Ms. Nelson protectively filed an application for benefits under Title II of the Act, alleging disability as of August 31, 2018. R. 88–104, 310–11. Ms. Nelson later amended her alleged onset date of disability to January 21, 2019. R. 27, 56. Ms. Nelson alleges disability due to memory loss, depression,

anxiety, and back/neck problems. R. 88. She has a limited education and past relevant work experience as an assembler. R. 41.

The Social Security Administration ("SSA") initially denied Ms. Nelson's application on December 20, 2019, and again upon reconsideration on September 24, 2020. R. 88–104, 106–26. On October 2, 2020, Ms. Nelson filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 172–73. That request was granted. R. 174–76. Ms. Nelson received a telephone hearing before ALJ Tracey B. Leibowitz on July 26, 2021. R. 68–87. After an initial unfavorable decision and a remand by the Appeals Council to obtain additional evidence from the vocational expert, Ms. Nelson received an additional telephone hearing before ALJ Leibowitz on November 29, 2022. R. 27, 51–67. On December 12, 2022, ALJ Leibowitz issued a decision, finding that Ms. Nelson was not disabled from January 21, 2019 through her date of last insured, December 31, 2021. R. 27–43. Ms. Nelson was fifty-four years old at the time of the ALJ decision. R. 41, 43.

Ms. Nelson appealed to the Appeals Council, which denied her request for review on March 27, 2023. R. 1–3. After the Appeals Council denied Ms. Nelson's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On May 1, 2023, Ms. Nelson sought this court's review of the ALJ's decision. *See* Doc. 1.

**II.    The ALJ's Decision**

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done "for pay or profit." 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20

C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Ms. Nelson would meet the insured status requirements of the Act through December 31, 2021. R. 28–29. Next, the ALJ found that Ms. Nelson "did not engage in substantial gainful activity during the period from her amended alleged onset date of January 21, 2019 through her date last insured of December 31, 2021." R. 29. The ALJ decided that Ms. Nelson had the following severe impairments: degenerative disc disease; disorders of muscle, ligament; depressive disorder; anxiety disorder; malingering; hypertension; hyperlipidemia;

cervicalgia; radiculopathy; paresthesia sacroiliitis; gastroesophageal reflux disease ("GERD"); and chronic pain syndrome. R. 29–30. The ALJ found that Ms. Nelson's obesity was not severe because it "fails to produce more than a minimal effect on her ability to perform basic work activities." R. 30–31. Overall, the ALJ determined that Ms. Nelson "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" to support a finding of disability. R. 31.

The ALJ found that Ms. Nelson "had the residual functional capacity to perform light work" with certain limitations. R. 32. The ALJ determined that Ms. Nelson could: occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach and overhead reach; frequently handle and finger; and occasionally be exposed to extreme cold, extreme heat, vibration, and hazards. R. 32. The ALJ prohibited climbing ladders, ropes, or scaffolds. R. 32. The ALJ determine that Ms. Nelson could: understand, remember, and carry out instructions involving no more than three steps; perform simple tasks for up to two hours without a break; use judgment to make simple work-related decisions in an environment with no more than occasional workplace changes; and occasionally interact with supervisors, coworkers, and the public. R. 32–33.

The ALJ determined that Ms. Nelson's past relevant work was that of an assembler. R. 41. The ALJ determined Ms. Nelson is "unable to perform any past relevant work." R. 41.

According to the ALJ, Ms. Nelson is "an individual closely approaching advanced age" and has "a limited education," as those terms are defined by the regulations. R. 41. The ALJ determined that "[t]ransferability of job skills is not an issue in this case because [Ms. Nelson's] past relevant work is unskilled." R. 41. Because Ms. Nelson's "ability to perform all or substantially all of the requirements of [light] work was impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain whether there were a significant number of jobs in the national economy that Ms. Nelson was capable of performing. R. 42. That expert concluded that there were indeed a significant number of such jobs in the national economy, such as a counter clerk, usher, and bakery worker/conveyer line. R. 42.

Based on these findings, the ALJ concluded that Ms. Nelson was not under a disability as defined in the Act, from January 21, 2019, through December 31, 2021, the date of last insured. R. 43. Ms. Nelson now challenges that decision.

## III.   Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied.

*See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**IV.    Discussion**

Ms. Nelson argues that "[t]he ALJ's articulated reasons to support her determination regarding [Ms. Nelson's] residual functional capacity are inadequate and not supported by substantial evidence[]" because the ALJ "failed to properly evaluate [Ms. Nelson's] complaints consistent with the Eleventh Circuit Pain Standard." Doc. 13 at 5. Additionally, Ms. Nelson argues that "the ALJ's determination regarding the persuasiveness of Dr. Teschner's opinion is not supported by substantial evidence." *Id.* at 15.

**A. The ALJ's Evaluation Under the Pain Standard**

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 404.1529(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1529(a), (b); Social Security Ruling 16-3p, 2017

WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 404.1529(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) consistency between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(3), (4); SSR 16-3p at *4, *7–*8. To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in her decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

This determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Ms. Nelson's arguments concern her functional limitations; she states that she "alleges disability primarily due to debilitating pain." Doc. 13 at 7. Ms. Nelson argues that the ALJ "erroneously ignored and overlooked parts of [Ms. Nelson's] medical record which are consistent with [her] allegations and inconsistent with [the ALJ's] findings." *Id.* at 8. Ms. Nelson also argues that "the ALJ ignored the totality of the evidence which undermines her conclusion that [Ms. Nelson] can perform a

range of light work." *Id.* at 9. And, Ms. Nelson argues that "the ALJ failed to

consider the longitudinal treatment history of [Ms. Nelson's] medical records." *Id.*

at 13.

It is clear the ALJ applied the Eleventh Circuit's pain standard. After

explaining the pain standard, with citations to 20 C.F.R. § 404.1529 and SSR 16-3p,

the ALJ considered Ms. Nelson's testimony about her symptoms. *See* R. 33–34. The

ALJ described Ms. Nelson's adult function report and testimony in her decision:

> The claimant reported in her Function Report that her
> conditions affect her ability to lift, squat, bend, stand,
> reach, walk, sit, kneel, climb stairs, complete tasks, use her
> hands, get along with others, follow instructions and
> understand. She reported that she got along with authority
> figures, had never been fired from a job because of
> problems getting along with others, she handled stress
> poorly and she forgets if her routine changes. The
> claimant's reported problems with personal care include
> not being able to put on a bra, hold a toothbrush and
> needing help to get off the toilet due to numbness.
> However, she reported that she could drive a car on rare
> occasions, could shop in stores, and she could count
> change and handle a savings account. The claimant was
> able to prepare simple meals like bread and baloney and
> could do some housework like folding towels. The
> claimant reported that she spent time with others, in person
> and on the telephone.
>
> . . . .
>
> The claimant testified at her hearing that she suffered from
> back pain that radiated to her right leg. She stated that after
> her back fusion surgery, she was unable to stand for long
> periods, up to 15 minutes. The claimant stated she had pain
> at a level of 7, and was only able to lift up to 5 pounds.

11

> The claimant stated that she became depressed after she
> lost her job. She also stated that she had difficulty
> remembering what she was supposed to do. She testified
> that she would lay down 80% of the day. She also stated
> that during the day prior to the hearing that she had a
> doctor's appointment, she folded some towels, and took
> her blood pressure medication[.] She state[d] that she was
> taking pain medication now. She also stated that she was
> on Facebook less now, "maybe 30 minutes.")

R. 33–34 (internal citations omitted).

"After careful consideration of the evidence," the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 34; *see* R. 34–38 (chronological discussion of medical evidence). The ALJ then found that Ms. Nelson's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 34. The ALJ stated that "the consistency of the claimant's allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of the record." R. 34. The ALJ pointed to "positive objective clinical findings" that "do not support more restrictive functional limitations than those assessed herein." R. 34. Additionally, the ALJ noted that "[t]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." R. 38. The ALJ stated that "the medical evidence of record indicates the claimant

received routine and conservative treatment for her impairments" and "[t]he lack of aggressive treatment, such as psychiatric hospitalization or inpatient treatment, suggests that claimant's symptoms and limitations were not as severe as the claimant alleged." R. 38.

As for Ms. Nelson's "statements about the intensity, persistence, and limiting effects of her symptoms," the ALJ wrote that "they are inconsistent because although [Ms. Nelson] alleged that she was not capable of working due to her mental and physical impairments, the record reflects that she was less limited than she alleged." R. 38. To support this conclusion, the ALJ pointed to a May 2022 medical examination where Ms. Nelson "stated that she was doing much better since she was prescribed an increased dosage of Cymbalta" and a September 2022 medical examination where Ms. Nelson reported "no musculoskeletal symptoms with no weakness, muscle aches, painful joints[,] or joint stiffness." R. 38.

The ALJ properly evaluated Ms. Nelson's symptoms consistent with the Eleventh Circuit's pain standard and her decision was supported by substantial evidence. After discussing the function reports and Ms. Nelson's testimony, R. 33–34, the ALJ summarized the medical evidence, R. 34–38. The medical evidence cited by the ALJ – generally unremarkable findings, no hospitalizations during the relevant period, and routine and conservative treatment – supports the ALJ's finding that Ms. Nelson's allegations of disabling limitations were not fully consistent with

the evidence. *See, e.g.*, R. 505 (reflecting inspection and palpation of spine within normal limits, range of motion within normal limits, strength testing 5/5 in major muscle groups, and positive special tests for nerve root disease); R. 508 (August 2019 MRI results showing "essentially stable" results); R. 510, 514 (reflecting medical visits where Ms. Nelson denied musculoskeletal symptoms); R. 591 (reflecting conservative care by chiropractor); R. 601 (reflecting maintenance of low back pain with medication); R. 704–05 (reflecting back pain, normal physiologic cervical lordosis, normal range of motion with pain, treatment of dexamethasone injection, and referral to pain management); R. 713 (noting "stable" low back pain); R. 760 (reflecting that Ms. Nelson was "[d]oing much better since we increased the Cymbalta" but she had "chronic low back pain"); R. 796–97 (reflecting that Ms. Nelson reported muscle cramps, neck pain, back pain, joint pain, joint stiffness, and joint swelling, but musculoskeletal exam of the cervical and lumbar spine revealed "no abnormality" and normal range of motion); R. 828 (reflecting that at October 2022 pain management visit Ms. Nelson received medications refills and a sacroiliac joint injection and she was "[d]oing well[ with] no side effects").

The ALJ acknowledged Ms. Nelson's pain and related physical symptoms and accounted for Ms. Nelson's subjective complaints when she determined Ms. Nelson was limited to light work with additional limitations. R. 32–33. Accordingly, there is no error in the ALJ's consideration of Ms. Nelson's subjective complaints.

**B.  The ALJ's Evaluation of Ms. Nelson's Medical Opinion Evidence**

The SSA has revised the applicable regulations related to medical opinion evidence. The SSA's new regulations, promulgated in 2017, do away with the hierarchy of medical opinions and the treating source rule. 20 C.F.R. § 404.1520c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" for all claims filed on or after March 27, 2017. *Id.* And the ALJ "will articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions . . . in [the claimant's] case record." *Id.* § 404.1520c(b).

When evaluating the persuasiveness of the opinions, the ALJ considers these factors: (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"; (2) consistency with the evidence; (3) relationship with the claimant, including the nature of the relationship, the length of the treatment relationship, the frequency of examinations, and the extent of the treatment relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim. *Id.* § 404.1520c(c). Supportability and consistency are the most important of the five factors, and an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [her] . . . decision."

*Id.* § 404.1520c(b)(2). The ALJ may explain how she considered the remaining factors, but she is not required to do so. *Id.* The ALJ is not required to use "magic words" or follow a particular formula to articulate her consideration of the factors. *See id.* § 404.1520c; *Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022).

Ms. Nelson argues that the ALJ failed to accord proper weight to opinions by Dr. Jane Teschner, Ms. Nelson's treating physician. Doc. 13 at 16–17; *see also* R. 697–98.

On October 22, 2020, Dr. Teschner wrote a three-paragraph letter. R. 697. She stated in part, that Ms. Nelson "began having back and neck pain that progressively worsened"; "had paresthesias (sic) and frank numbness develop in her arms, hands, legs, and feet to the point that it was unsafe for her to continue working at a job she became unable to perform"; and "had several unsuccessful surgeries since and her symptoms continue to worsen." R. 697. Dr. Teschner concluded that "I am afraid I do not know any job a person with these problems could perform[]" and "[t]hese symptoms will be lifelong and worsen over time." R. 697.

On April 12, 2021, Dr. Teschner wrote a one-paragraph letter titled "UPDATE." R. 698. Dr. Teschner stated: "Ms. Nelson[']s surgeries on her neck, lumbar spine, and right shoulder were how you say 'botched'. Her back and its reaction when doing reflex testing is no where near the reaction of one whose spine

is intact and normally aligned." R. 698. Dr. Teschner continued by commenting on

Ms. Nelson's credibility: "She is very credible; she is not lazy; in fact she's the kind

of gal that likes to 'get physical'." R. 698.

The ALJ considered Dr. Teschner's medical opinion and discussed it in her

residual functional capacity findings as follows:

> The opinion of Jane Teschner, M.D. is not persuasive. In her letters dated October 22, 2020 and April 12, 202[1], Dr. Teschner failed to include clinical findings or physical examination of the claimant's visit of January 21, 2019, and she failed to provide or otherwise include diagnostic or imaging results or even examinations to corroborate her diagnoses and/or assessments. Moreover, in a letter to the hearing office dated July 14, 2021, the claimant's representative requested evidence on June 1, 2020, October 2, 2020, April 19, 2021, and June 2, 2021. In addition, in a note received by the hearing office on June 14, 2021, the claimant wrote that she had tried several times calling Dr. Teschner and going to her office, and still had not gotten an answer. Therefore, the opinion of Dr. Teschner is not persuasive.

R. 40 (internal citations omitted).

Ms. Nelson does not challenge how the ALJ assessed Dr. Teschner's letters;

instead, Ms. Nelson argues that the letters are "consistent with and supported by the

record as a whole" because Ms. Nelson "sought consistent treatment for her

debilitating pain and physical examinations documented the presence of pain." Doc.

13 at 17.

As an initial matter, the ALJ "considered th[is] medical opinion[] . . . in accordance with the requirements of 20 CFR 404.1520c." R. 33. Additionally, she stated: "As for medical opinion(s) . . . , I cannot defer or give any specific evidentiary weight, including controlling weight, to . . . medical opinion(s), including those from medical sources." R. 38. The ALJ articulated how persuasive she found the opinion, as required by the regulations. R. 40 ("The opinion of Jane Teschner, M.D. is not persuasive."); *see* 20 C.F.R. § 404.1520c(b).

The ALJ applied the correct legal standards in evaluating Dr. Teschner's opinion, and substantial evidence supports her finding that it was "not persuasive" because it "failed to include clinical findings or physical examination of the claimant's visit" and "failed to provide or otherwise include diagnostic or imaging results or even examinations to corroborate her diagnoses and/or assessments." *See* R. 40. Before the ALJ made this finding with respect to Dr. Teschner's opinion, the ALJ detailed Ms. Nelson's history of chronic pain and muscle/joint problems. R. 34–38. In this section of her decision, the ALJ specifically referenced Dr. Teschner's medical treatment notes from January 2019:

> In January 2019, the claimant was treated by Janie Teschner, M.D. at Mercy Medical Clinic. Dr. Teschner noted that the claimant presented complaining of arm, hand, back and neck pain experienced every day. In her systems review, Dr. Teschner indicated the claimant was positive for high blood pressure, shortness of breath, joint pain, muscle pain, leg swelling, headaches, dizziness, difficulty walking and numbness and tingling, and positive

> for anxiety, irritability and depression. Dr. Teschner
> labeled the visit type as legal, indicated that her chief
> complaint was low back pain and neck pain, and her
> primary care physician was Dr. Ponder. She reviewed the
> claimant's maintenance medication that included
> Cymbalta, Zanaflex, Gabapentin and Losartan. Notably,
> Dr. Teschner observed that the claimant had to kneel
> during examination on the floor of her office, and she
> noted the claimant's report that she was not prescribed a
> cane, but she had a cane and used it at times, but did not
> present with the cane during the office visit.

R. 35 (internal citations omitted); *see also* R. 489–92.

Under the new regulations, the ALJ adequately accounted for her finding regarding Dr. Teschner's medical opinion. The ALJ's decision reflects that she considered Dr. Teschner's treatment notes in her analysis. R. 35. Notably, these treatment notes did not contain clinical findings or results of a physical examination. R. 40, 489–92. The opinions also lacked clinical findings, physical examination, or diagnostic or imaging results. R. 697–98. Therefore, Dr. Teschner's opinion was neither supported nor consistent pursuant to the regulations. Additionally, the ALJ cited other medical evidence in the record that was inconsistent with Dr. Teschner's opinion. *See* R. 34–38.

The ALJ applied the correct legal standards in evaluating Dr. Teschner's opinion, and substantial evidence supports her finding that it was not persuasive. Ms. Nelson has not shown that the ALJ erred in her consideration of the medical opinion evidence.

## VI.    Conclusion

The ALJ's determination that Ms. Nelson is not disabled is supported by substantial evidence. The Commissioner's final decision is therefore affirmed. A separate order will be entered.

**DONE** and **ORDERED** this 23rd day of September, 2024.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE